

*United States Attorney*
*Eastern District of New York*

EDP:WPC/CWE
F. #2024R00527

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

January 21, 2026

<u>By Email</u>

The Honorable James R. Cho
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:    United States v. Carlos Alberto Guerrero Mercado, et al.
            <u>Criminal Docket No. 24-287 (S-1) (EK)</u>

Dear Judge Cho:

      On January 20, 2026, the defendants, Carlos Alberto Guerrero Mercado and Guillermo Isaias Perez Parra, were transferred to the United States by the Government of Mexico because they conspired to use chemical precursors to manufacture fentanyl for distribution into the United States. For the reasons set forth below, the Court should enter a permanent order of detention pending trial, as no condition or combination of conditions of release can assure the safety of the public or the defendants' appearance at trial, and the government respectfully submits that the Court should therefore enter a permanent order of detention pursuant to Title 18, United States Code, Section 3142(e).

I.      <u>Background</u>[1]

      Fentanyl remains a deadly drug threat facing the United States. A potentially deadly dose of fentanyl can be as little as 2 milligrams, depending on body size, tolerance and past usage. <u>See</u> dea.gov/resources/facts-about-fentanyl.

---

[1] As permitted by the Second Circuit, the government proceeds by factual proffer in support of its motion for a Permanent Order of Detention. <u>See</u> <u>United States v. LaFontaine</u>, 210 F.3d 125, 130–31 (2d Cir. 2000); <u>United States v. Ferranti</u>, 66 F. 3d 540, 542 (2d Cir. 1995). This proffer seeks only to articulate facts sufficient to justify detention; thus, it is not a complete statement of all the evidence of which the government is aware or which it will seek to introduce at trial.

Fentanyl is a synthetic opioid not a naturally occurring substance. International chemical companies advertise and export to the United States and Mexico the precursor chemicals needed to manufacture fentanyl. Fentanyl precursors are shipped from China or India through the United States for delivery in Mexico. Several international drug trafficking organizations are based in Mexico and use fentanyl precursor chemicals in clandestine laboratories to manufacture fentanyl which is ultimately bound for the United States. For example, the Sinaloa Cartel is responsible for the distribution of much of the synthesized fentanyl in the United States.

Certain fentanyl precursor chemicals, such as 1-boc-4-piperidone, have virtually no legitimate uses aside from making fentanyl or psychoactive analogues. When combined with other chemicals, 1-boc-4-piperidone can be used to manufacture fentanyl. Furthermore, 4-piperidone (and its acetals, amides, carbamates, salts, and salts of its acetals, its amides, and its carbamates, which includes 1-boc-4-piperidone) is a List I chemical due to its use in clandestine laboratories to illicitly manufacture fentanyl.

II.      The Defendants' Conduct

The defendants are fentanyl manufacturers. Between August 2023 and July 2024, the defendants conspired to smuggle precursor chemicals into Mexico—the raw materials required to make fentanyl. These materials were often acquired in China and frequently passed through the United States in transit on their way to Mexico. Some of these chemicals were intercepted as they travelled through the United States. For example, in August 2023, the defendants bought the fentanyl precursor 1-boc-4-piperidone from a company in China. The Chinese company shipped the approximately 50 kilograms of that precursor to a Texas border town, where a co-conspirator was scheduled to accept delivery. That fentanyl precursor was intercepted and seized by law enforcement.

Once the precursor chemicals arrived in Mexico, the defendants used these chemicals as the building blocks for significant quantities of fentanyl, which was then distributed throughout the United States. Assuming best laboratory practices, 50 kilograms of 1-boc-4-piperidone combined with other chemicals can synthesize approximately 90 kilograms of fentanyl. The defendants and their co-conspirators then used the profits of this operation to promote and advance their drug trafficking.

III.     The Indictment

On August 12, 2024, a grand jury sitting in the Eastern District of New York returned a three-count Indictment against the defendants. Count One charges the defendants with participating in an international fentanyl manufacture and distribution, in violation of Title 21, United States Code, Sections 963, 960(b)(1)(F), and 959(d). Count Two charges the defendants with participating in the international listed chemical manufacture and distribution conspiracy, in violation of Title 21, United States Code, Sections 963, 960(d)(7), and 959(d).

Count Three charges the defendants with participating in a money laundering conspiracy, in violation of Title 18, United States Code, Section 1956(h).

Counts One carries a mandatory minimum term of imprisonment of ten years. Both defendants face a maximum of life imprisonment.

IV.     The Defendants Should be Detained Pending Trial

A.  The Bail Reform Act and Applicable Law

Under the Bail Reform Act, 18 U.S.C. §§ 3141 et seq., a federal court must order a defendant detained pending trial where it determines that "no condition or combination of conditions would reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e). A presumption of dangerousness and risk of flight arises when, as here, a defendant is charged with an offense under the Controlled Substances Act or the Controlled Substances Import and Export Act that carries a maximum term of imprisonment of 10 years or more and the Court finds probable cause to believe that the defendant committed such offense. 18 U.S.C. § 3142(e)(3)(A). Standing alone, a grand jury's Indictment is sufficient to establish probable cause. See United States v. Contreras, 776 F.2d 51, 54–55 (2d Cir. 1985).

In light of this applicable presumption, the Court must initially assume there is "no condition or combination of conditions that will reasonably assure the appearance of the person as required and the safety of the community." 18 U.S.C. § 3124(e)(3). The defendant may rebut this presumption by coming "forward with evidence that he does not pose a danger to the community or a risk of flight." United States v. Mercedes, 254 F.3d 433, 436 (2d Cir. 2001) (per curiam). If the defendant satisfies his burden of production, the government retains the burden of persuasion to demonstrate by clear and convincing evidence that the defendant presents a danger to the community and by a preponderance of the evidence that the defendant presents a risk of flight. See 18 U.S.C. § 3142(f); Mercedes, 254 F.3d at 436; United States v. Jackson, 823 F.2d 4, 5 (2d Cir. 1987); United States v. Chimurenga, 760 F.2d 400, 405 (2d Cir. 1985).

The concept of "dangerousness" encompasses not only the effect of a defendant's release on the safety of identifiable individuals, such as witnesses, but also "'the danger that the defendant might engage in criminal activity to the detriment of the community.'" United States v. Millan, 4 F.3d 1038, 1048 (2d Cir. 1993) (quoting legislative history). Indeed—and significantly—danger to the community includes "the harm to society caused by [the likelihood of continued] narcotics trafficking." United States v. Leon, 766 F.2d 77, 81 (2d Cir. 1985). In considering risk of flight, courts have found that where the evidence of guilt is strong, it provides "a considerable incentive to flee," United States v. Millan, 4 F.3d 1038, 1046 (2d Cir. 1993), as does the possibility of a severe sentence, see Jackson, 823 F.2d at 7; United States v. Martir, 782 F.2d 1141, 1147 (2d Cir. 1986) (defendants charged with serious offenses with significant maximum terms had potent incentives to flee); see also United States v. Cisneros, 328 F.3d 610,

618 (10th Cir. 2003) (defendant was flight risk because her knowledge of seriousness of charges against her gave her strong incentive to abscond to Mexico).

Courts consider several factors in making the determination of whether pretrial detention is appropriate: (1) the nature and circumstances of the crime charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant, including family ties, employment, financial resources, community ties, and past conduct; and (4) the nature and seriousness of the danger to any person or the community that would be posed by release. See 18 U.S.C. § 3142(g). Even where the defendant has met his burden of production to rebut the statutory presumption in favor of detention, the presumption remains a factor for the Court to consider. Mercedes, 254 F.3d at 436.

B. The Court Must Apply a Presumption of Detention

As an initial matter, this case involves offenses for which, under the law, there is a presumption that no condition or combination of conditions will reasonably assure each defendant's appearance or the safety of the community. See 18 U.S.C. § 3142(e)(3). Specifically, because the defendants are charged with offenses under the Controlled Substances Act for which the maximum term of imprisonment is life, they are both presumed to pose both a danger to the community and a risk of flight. Accordingly, both defendants bear the initial burden of showing that they are not a danger to the community or a flight risk—a burden they cannot meet. For this reason alone, the Court should enter an order of permanent detention.

C. The Defendants Are a Clear Danger to the Community

The facts and circumstances of this case compel each defendant's detention, as the relevant Bail Reform Act factors show that each defendant poses an extraordinary danger to the community.

The counts for which the defendants are charged—participating in an international fentanyl and listed chemical manufacture and distribution conspiracy and money laundering conspiracy—are extremely serious and, appropriately, carry significant sentencing exposure. Count one, for example, carries a 10-year mandatory minimum prison sentence. See 21 U.S.C. §§ 963, 960(b)(1)(F). The defendants' individual conduct could not be more dangerous: they bear unique responsibility for the harm that fentanyl has done, as they are among the individuals who personally sought out and obtained the raw materials needed to manufacture the fentanyl distributed in our communities. Given this extraordinarily dangerous conduct, no combination of release conditions can adequately protect the community from the defendants, and each should be ordered detained pending trial.

D. The Defendants Pose a Significant Risk of Flight

Detention is likewise necessary here given that neither defendant can overcome the presumption that he poses a significant risk of flight.

4

First, if convicted of participating in an international fentanyl distribution conspiracy, as charged in Count One, each defendant faces a mandatory minimum sentence of imprisonment of ten years and a maximum sentence of life. Given the significant jail time each defendant faces upon conviction, each has a has a strong incentive to flee this jurisdiction. See Jackson, 823 F.2d at 7 (prospect of severe sentence creates incentive to flee); Martir, 782 F.2d at 1147 (charges with significant maximum terms created potent incentive to flee); Cisneros, 328 F.3d at 618 (seriousness of charges gave defendant strong incentive to abscond).

Second, the defendants' personal history and characteristics demonstrate that they are each a significant flight risk. Neither defendant has any known personal ties to the United States. Moreover, each was transferred from Mexico and brought to the United States for the sole purpose of facing criminal prosecution. Neither defendant has any legal status in this country. Given the absence of any connection to the United States (aside from the drug trafficking activities) and extensive ties to Mexico, each defendant poses a significant risk of flight.

V.      Conclusion

        For the foregoing reasons, the government respectfully requests that the Court order that the defendants, Carlos Alberto Guerrero Mercado and Guillermo Isaias Perez Parra, be detained permanently pending trial, as there is no condition or combination of conditions that could reasonably assure the safety of the community or the defendant's appearance at trial.

                    Respectfully submitted,

                    JOSEPH NOCELLA, JR.
                    United States Attorney


By:     /s/William P. Campos
        William P. Campos
        Chand Edwards-Balfour
        Adam Amir
        Assistant U.S. Attorneys
        (718) 254-6104

5